# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**PUBLIC RISK MANAGEMENT OF FLORIDA,**

    Plaintiff,

v.                                Case No: 8:18-cv-1449-MSS-AEP

**MUNICH REINSURANCE AMERICA, INC.,**

    Defendant.

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Summary Judgment, (Dkt. 44), Defendant's response in opposition thereto, (Dkt. 53), and Plaintiff's reply, (Dkt. 57); and Defendant's Dispositive Motion for Final Summary Judgment, (Dkt. 45), Plaintiff's response in opposition thereto, (Dkt. 51), and Defendant's reply. (Dkt. 58) On January 21, 2021, United States Magistrate Judge Anthony E. Porcelli issued a Report and Recommendation ("R&R"), recommending that Plaintiff's Motion be denied, and Defendant's Motion be granted. (Dkt. 85) Plaintiff timely filed objections to the R&R, (Dkt. 89), and Defendant responded to the objections. (Dkt. 90)

### I.  LEGAL STANDARD

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify the Magistrate Judge's

report and recommendation. 28 U.S.C. § 636(b)(1); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ., 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. 1609, 94th Cong. § 2 (1976)). In the absence of specific objections, there is no requirement that a district judge review factual findings *de novo*, Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993), and the court may accept, reject, or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(C). The district judge reviews legal conclusions *de novo,* even in the absence of an objection. See Cooper-Houston v. Southern Ry., 37 F.3d 603, 604 (11th Cir. 1994).

## II.   DISCUSSION

This is a reinsurance coverage action between Public Risk Management of Florida ("PRM") and Munich Reinsurance America, Inc. ("Munich Re"). (Dkt. 17) PRM, the reinsured, contends that the Parties' reinsurance agreement obligates Munich Re, the reinsurer, to reimburse PRM for settlement and defense costs it incurred on behalf of its insured, the City of St. Pete Beach, in an underlying lawsuit filed by City residents Chester and Katherine Chmielewski. (Id. at ¶¶ 30-58) Munich Re argues that it is not obligated to provide the reimbursement PRM seeks. (Dkt. 18 at 39-47) Following discovery, the Parties cross-moved for summary judgment, and the Court referred the Motions to Judge Porcelli for issuance of an R&R. (Dkts. 44,

2

45, 63) The R&R recommends that the Court deny PRM's Motion, grant Munich Re's Motion, and issue a declaratory judgment that "the complained of acts and injuries happened prior to Munich [Re's] reinsurance coverage or were related to prior acts that occurred during a period(s) prior to the effective date of coverage under the [r]einsurance [a]greement, and therefore Munich [Re] does not need to provide reinsurance coverage for the [u]nderlying [l]itigation." (Dkt. 85 at 37)

PRM advances several objections to the R&R. (Dkt. 89) PRM contends that the R&R (i) failed to address whether the "follow the fortunes" doctrine applies or, in the alternative, incorrectly "impl[ied]" that it is inapplicable; (ii) ignored language in the reinsurance agreement providing that, where the "date of loss" "cannot be specifically determined," the date of loss "shall be the inception date" of the underlying insurance policy; (iii) failed to address PRM's duty to defend the City of St. Pete Beach in the underlying litigation; and (iv) ignored that the underlying litigation could not have been brought until after November 26, 2008, when the stipulated final judgment was entered in the state-court quiet-title action. (Id.) The Court concludes that none of these objections has merit. Accordingly, the Court adopts the R&R and grants summary judgment in favor of Munich Re.[1]

**A. The "Follow the Fortunes" Doctrine**

As an initial matter, to the extent the R&R does not expressly address the applicability of the "follow the fortunes" doctrine, the Court clarifies that the doctrine

---

[1] The Court assumes the Parties' familiarity with the factual and procedural history of this case, which is set forth in the R&R.

3

does not apply to the reinsurance agreement in this action. "[I]n providing reinsurance, the reinsurer acquires no direct liability to the original policyholder; rather, the reinsurer assumes an obligation to indemnify the insurer for payments it makes under the reinsured policies." Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am., 609 F.3d 143, 149 (3d Cir. 2010). To "prevent the reinsurance relationship from encroaching on coverage disputes between the insurer and its insured," reinsurance agreements often contain a "follow the fortunes" provision. Id. This provision "usually states that when an insurer loses to—or settles with—the insured, the reinsurer must 'follow the fortunes' of the ceding company and pay on its reinsurance obligations." Am. Bankers Ins. Co. of Fla. v. Nw. Nat. Ins. Co., 198 F.3d 1332, 1335 (11th Cir. 1999). The "follow the fortunes" doctrine "requires a court to find reinsurance coverage unless the reinsurer demonstrates the liability to the insured was the result of fraud and collusion or not reasonably within the scope of the original policy." N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1207 (3d Cir. 1995).

The "follow the fortunes" doctrine does not apply, however, unless the reinsurance agreement contains a "follow the fortunes" clause. See Emp. Reinsurance Corp. v. Laurier Indem. Co., No. 8:03CV1650T17MSS, 2007 WL 1831775, at *15 (M.D. Fla. June 25, 2007) (rejecting contention that "'follow the fortunes/follow the settlements' clauses' are "automatically implied in all reinsurance agreements"); Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies & Insureds § 7:10 (6th ed. 2021) ("[C]ourts in the majority of states that have addressed the issue have held tha[t] an insurer does not have to provide 'follow the fortunes'

4

coverage if the insurance policy does not contain a 'follow the fortunes' provision."). As this Court has explained, "[u]nlike parties within the ambit of primary insurance, both parties negotiating reinsurance contracts are sophisticated entities regularly involved in bargaining on equal footing." Emp. Reinsurance Corp., 2007 WL 1831775, at *15. "If a 'follow the fortunes/follow the settlements' clause is of particular importance to a potential reinsured, it is certainly capable of ensuring that such provision becomes a part of a reinsurance contract." Id. Accordingly, absent such a clause, "none [is] implied. Id.

The question in this case thus reduces to whether the Parties' reinsurance agreement contains a "follow the fortunes" clause. It does not. PRM relies on a provision in the reinsurance agreement providing that "[p]ayment by [Munich Re] of its portion of loss and expense, paid by or on behalf of PRM, will be made by [Munich Re] to PRM promptly after proof of payment by PRM and coverage hereunder is received by [Munich Re]." (Dkt. 89 at 10) This provision simply requires Munich Re to make prompt payment to PRM once PRM provides "proof of payment by PRM and coverage hereunder." Id. The provision does not state that PRM's coverage determinations are binding on Munich Re—the *sine qua non* of a "follow the fortunes" clause. See Steven C. Schwartz, Reinsurance Law: An Analytic Approach § 9.02 (2021) ("[I]f the clause in question cannot be read to bind the reinsurer to the cedent's coverage determinations under the underlying policy, it will not be construed as a follow the fortunes clause."). Significantly, the provision bears no resemblance to "follow the fortunes" clause in American Bankers, which stated that "[a]ll claims

5

involving this reinsurance when settled by the Company, *shall be binding on the Reinsurer*, which shall be bound to pay its proportion of such settlements." 198 F.3d at 1334 (emphasis added). Absent a clause in the reinsurance agreement providing that Munich Re is bound by PRM's coverage determinations, the "follow the fortunes" doctrine does not apply.

### B. The "Date of Loss" Provision

PRM next contends that the R&R "ignore[d]" the provision in the reinsurance agreement stating that, "[i]f the date of any loss occurring under PRM's Coverage Document cannot be specifically determined, the date of loss shall be the inception date of the Coverage Document." (Dkt. 89 at 13-14) This argument is unpersuasive.

The reinsurance agreement and the underlying policy provided occurrence-based coverage from April 1, 2008 to April 1, 2009. (Dkt. 61 at ¶ 7) The underlying policy stated that, "[a]s respects a series of related **WRONGFUL ACTS** by one or more **MEMBERS** taking place over more than one **COVERAGE PERIOD**, the **WRONGFUL ACT** shall be deemed to have been committed during the first **COVERAGE PERIOD** in which the first of such acts or alleged acts took place." (Id. at ¶ 10) Under this provision, if any of the City of St. Pete Beach's wrongful acts took place before April 1, 2008, the underlying policy would not provide coverage for the Chmielewskis' lawsuit, and Munich Re would not be obligated to reimburse PRM for any amounts it paid out under the policy. PRM points out that neither side identified a "specific date" of occurrence—that is, the exact date when the City's first "wrongful

act" took place. (Dkt. 89 at 14-15) PRM contends that this failure triggers the provision requiring that, where the "date of loss" "cannot be specifically determined," the date of loss "shall be the inception date" of the underlying policy—April 1, 2008. (Id.) Thus, according to PRM, coverage existed for the Chmielewskis' lawsuit. (Id.)

The R&R correctly rejected this argument. The R&R acknowledged that "the date of occurrence remained a moving target for all parties involved." (Dkt. 85 at 36) As the R&R explained, however, "[t]he fact that Munich [Re] cannot identify a *specific date* is of no moment." (Id.) The reinsurance agreement and the underlying policy "indicate that a specific date must be provided *if* the occurrence falls within the coverage period under the Coverage Document, which would exclude wrongful acts that constitute a series of wrongful acts beginning prior to the coverage period." (Id. at 37) Here, as the R&R made clear, "the loss did not occur under the Coverage Document" because "[t]he record in the [u]nderlying [l]itigation is replete with references to actions taken by the City prior to April 1, 2008, the effective date of the Coverage Document and the Reinsurance Agreement, that interfered with the Chmielewskis['] possessory interest in their property." (Id. at 25, 37) As a result, "the fact that Munich [Re] could not specifically identify a date of occurrence is irrelevant." (Id. at 37) PRM's objection to this finding is overruled.

### C. The Duty to Defend

PRM also faults the R&R for "ignoring" that PRM owed the City of St. Pete Beach a duty to defend the underlying lawsuit. (Dkt. 89 at 17-22) This objection fails.

7

"In Florida, the general rule is that an insurance company's duty to defend an insured is determined solely from the allegations in the complaint against the insured, not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." Trailer Bridge, Inc. v. Ill. Nat. Ins. Co., 657 F.3d 1135, 1141 (11th Cir. 2011). "The insurer must provide a defense in the underlying action if the complaint states facts that bring the injury within the policy's coverage." Id. Where, as here, "coverage is limited to occurrences during the policy period, there is no duty to defend" claims that fall outside the policy period. Accident Ins. Co., Inc. v. V&A Drywall & Stucco, Inc., No. 2:20-CV-407-SPC-MRM, 2021 WL 1338768, at *2 (M.D. Fla. Apr. 9, 2021).

As explained above, if any of the City of St. Pete Beach's wrongful acts took place before April 1, 2008, the underlying policy would not provide coverage for the Chmielewskis' lawsuit, and Munich Re would not be required to reimburse PRM for any amounts paid under the policy. (Dkt. 61 at ¶ 10) The R&R carefully examined the allegations of the operative complaint in the underlying lawsuit, concluding that the complaint "set[ ] out a list of actions and omissions by the City that interfered with the Chmielewskis' possessory interest in the property," and that some of this alleged conduct took place well before the policy period. (Dkt. 85 at 25, 30) The R&R also noted that "[t]he allegations establishing the basis for [the Fourth Amendment claim] in the [operative complaint] relate back to [events outside the policy period] by using language such as 'with increasing intensity,' 'intensified,' 'reinvigorated its actions,' 'continued,' and '[a]t least from the time of the Quiet Title Final Judgment.'" (Id. at

30) PRM identifies no error in these findings, which are supported by the record. Accordingly, because the allegations in the operative complaint identified wrongful acts that took place before the policy period, PRM did not owe the City a duty to defend the underlying lawsuit.

**D. The Effect of the November 26, 2008 Stipulated Final Judgment**

Finally, PRM argues that the R&R failed to recognize that the Chmielewskis "could not have had any undisputed possessory interest or rights to the subject beach parcel prior to November 26, 2008, the date that the Pinellas County Circuit Court issued a stipulated final judgment in the quiet title action between them and the City establishing that possessory interest once and for all." (Dkt. 89 at 22) PRM contends that, because the Chmielewskis lacked standing to bring the underlying lawsuit before November 26, 2008, only events taking place after that date could have formed the basis for the jury verdict on the Fourth Amendment claim. (Id. at 23) Thus, according to PRM, the underlying lawsuit fell within the April 1, 2008-April 1, 2009 coverage period. (Id. at 24-25)

Again, Judge Porcelli correctly rejected this argument. The Chmielewskis' Fourth Amendment claim required proof that the City was responsible for "some meaningful interference with [the Chmielewskis'] possessory interests in th[e] property." Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992). As the R&R explained, "the Chmielewskis' possessory interest in their property existed prior to entry of the Stipulated Final Judgment rather than as a result of the entry of the Stipulated Final Judgment." (Dkt. 85 at 35) Although "[t]he Stipulated Final Judgment provided clear

9

*evidence* of the enforceability of the[ ] [Chmielewskis'] possessory interests," "the Stipulated Final Judgment did not *establish* their possessory interests." (Id.) Accordingly, there is no basis for PRM's assertion that the Chmielewskis lacked a possessory interest in their property before November 26, 2008, when the stipulated final judgment was entered in the state-court action.

### III. CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Plaintiff's Objection, (Dkt. 89), to the Report and Recommendation, (Dkt. 85), is **OVERRULED**.

2. The Report and Recommendation, (Dkt. 85), is **CONFIRMED** and **ADOPTED** as part of this Order.

3. Plaintiff's Motion for Summary Judgment, (Dkt. 44), is **DENIED**.

4. Defendant's Dispositive Motion for Final Summary Judgment, (Dkt. 45), is **GRANTED**.

5. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff. The judgment shall state: "The Court expressly finds that Defendant is not required to provide reinsurance coverage to Plaintiff for the cost of defense or any portion of the judgment or settlement paid in Chmielewski et al. v. City of St. Pete Beach, No. 8:13-cv-3170-T-27MAP (M.D. Fla.)."

6. Following entry of judgment, the Clerk is **DIRECTED** to close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 27th day of April 2021.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person